IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RONALD ALAN HUMMEL, | Cause No. CV 24-172-M-BMM |
| Petitioner, | |
| vs. | ORDER |
| WARDEN DEMETRIC GODFREY, ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

State pro se prisoner Ronald Alan Hummel ("Hummel") filed a 28 U.S.C. § 2254 habeas petition, along with exhibits. (Docs. 1 & 1-1.) During the prescreening of Hummel's petition, *see* Rule 4 Governing Section 2254 Cases, the Court noted that Hummel also had filed a Section 1983 civil rights action in which he had raised similar, but not identical, claims to those in his habeas petition. *See*, (Doc. 6.) The Court provided Hummel an opportunity to file an amended petition and advised Hummel that he must present all habeas claims in one filing. (*Id*. at 3-4.) Hummel timely filed his amended petition. (Doc. 7.)

Upon screening Hummel's amended petition, the Court observed that Hummel had not identified the federal law and/or constitutional provision that was violated. Hummel also failed to establish the manner in which the Montana Supreme Court unreasonably applied a federal provision to his case, pursuant to 28

1

U.S.C. § 2254(d)(1). Hummel also failed to show that the Court made an unreasonable determination of the facts in light of the evidence presented at his trial pursuant to § 2254(d)(2). The Court advised Hummel that deference would be afforded to the Montana state court decision unless he could make an adequate showing under one of these prongs. *See generally*, (Doc. 12.)  Hummel timely responded.  (Doc. 13.)  This matter is ripe for adjudication.

**Background**

Following a 2019 jury trial in Montana's Eleventh Judicial District, Flathead County, Hummel was convicted of felony Driving Under the Influence ("DUI"). (Doc. 1 at 2-3.)  Hummel was committed to the Montana State Prison for 25 years. (*Id*. at 2.)  Hummel timely appealed.

On appeal Hummel argued that (1) the Montana state district court violated his right to confrontation by allowing a witness to testify by video conference, (2) the Montana state district court abused its discretion in denying his motion to call the prosecutor as an impeachment witness, and (3) the written judgment did not conform with the oral pronouncement of sentence. *See, State v. Hummel*, 2022 MT 125N (Mont. June 28, 2022). The Montana Supreme Court affirmed Hummel's conviction for DUI but reversed and remanded with a directive to the Montana state district court to conform the written judgment to its oral pronouncement of sentence by clarifying the parole conditions and recommendations. *Id*. at ¶ 2.

2

Hummel sought relief with the Montana Sentence Review Division ("SRD"). (Doc. 1 at 3.) The SRD affirmed Hummel's sentence on November 30, 2023. (Doc. 1-1 at 1-2.) Hummel filed his petition for habeas relief with this Court. (Doc. 1.) Hummel claimed in his original petition that the State's main witness, Mr. Smith ("Smith"), had lied about what happened. Hummel maintains that he had consumed alcohol only after parking his motorcycle, thus, he was not "operating" his motorcycle while under the influence of alcohol. (*Id*. at 3-5.)

Hummel asserts in his amended petition that the State of Montana must disclose evidence "that is exculpatory or information that tends to mitigate or negate the defendant's guilt as to the offense charged." (Doc. 7 at 4.) Hummel explains that the prosecutor was a necessary witness to impeach Smith's credibility, as Smith had initially told the prosecutor that he, Smith, had been drinking before observing Hummel's actions. Smith testified that he, himself, had not been drinking on the day of the incident. (*Id*.)

Hummel asserts this error was not harmless as his defense depended on Smith's "mixed consistent and inconsistent statements." (*Id*.) Hummel reiterates the argument that his appellate counsel advanced on direct appeal. (*Id*. at 9-10.) Hummel asserts that the jury should have been able to consider whether Smith was impaired when he observed Hummel on the day of DUI citation and/or if he was lying under oath. (*Id*. at 10.)

In his response to the show cause order, Hummel contends that a *Brady* violation occurred when the Montana state trial court denied the defense request to call the prosecutor as a witness to impeach the credibility of Smith. *See*, (Doc. 13 at 5-6.) Hummel states that his defense was relying upon the prosecution to contradict Smith's prior statement that Smith had provided to the prosecutor with his trial testimony. The prosecution would have allowed the defense to question Smith's overall credibility regarding the events Smith purportedly observed. (*Id*. at 6-7.)

When Smith was on the witness stand and he denied having consumed alcohol on the day in question, it was then imperative for the defense to be able to call the prosecutor to challenge the prior inconsistent statement and undermine Smith's overall credibility. (*Id*. at 9.) Hummel alleges that his defense was hamstrung by the Montana state district court denying the defense the ability to call the prosecutor as a witness. (*Id*. at 9-10.) Smith refers back to his reply brief filed with the Montana Supreme Court for the argument that an error of constitutional magnitude occurred which was not harmless. (*Id*. at 11.)

**Montana Supreme Court Decision**

The Court explained this particular issue as follows:

Hummel next argues the District Court abused its discretion by denying his request to call the prosecutor as a witness to impeach Smith's credibility with a prior inconsistent statement. The prosecutor interviewed Smith before trial. In an e-mail to Hummel's defense counsel outlining what Smith told him, the

4

prosecutor wrote Smith stated he had consumed alcohol the day of the incident. Defense counsel did not interview Smith before trial. Shortly before the jury was brought in for opening statements, the prosecutor informed defense counsel he had spoken to Smith again after selecting the jury and Smith now stated he had not consumed alcohol the day of the incident and the prosecutor must have misheard him. During cross-examination, Smith denied he consumed alcohol that day. Defense counsel then sought to impeach Smith with his prior inconsistent statement to the prosecutor. Smith adamantly denied he drank alcohol that day and maintained he does not drink alcohol. The prosecutor objected when defense counsel asked, "So if [the prosecutor] had told me he told me he was drinking, would that be dishonest of him?" After a sidebar discussion, the District Court ruled defense counsel could not impugn the prosecutor's credibility and struck that question from the record. Back in front of the jury, defense counsel moved onto another line of questioning. On the morning of the second day of trial, defense counsel raised the issue of calling the prosecutor as an impeachment witness to testify about Smith's prior inconsistent statement. He argued his cross-examination of Smith on this issue was shut down. The District Court stated it was not shutting down further questioning about Smith's drinking but was shutting down questioning about the prosecutor's honesty. Defense counsel sought to call the prosecutor as a witness, or a stipulation Smith made an inconsistent statement, or to enter the e-mail from the prosecutor into evidence for the jury to see. The District Court denied the motion. The District Court reasoned defense counsel was able to cross-examine Smith about his alcohol consumption under oath. The defense recalled Smith to the stand and again questioned him whether he had been drinking the day of the incident. Smith again adamantly denied he had consumed alcohol and maintained he does not drink alcohol. He stated he did not recall telling the prosecutor before trial he had consumed alcohol that day and the prosecutor must have been mistaken.

*State v. Hummel*, 2022 MT 125N, ¶ 9,  511 P.3d 1001 (Table).  The Court

explained its denial of the claim:

> The District Court did not commit a clear and prejudicial abuse of discretion under the facts of this case. Hummel was allowed to cross-examine Smith and to recall him for further questioning about his alcohol consumption. Hummel questioned Smith about whether he had ever been intoxicated,

whether he drank alcohol the day of the incident, and why his statement to the prosecutor about his alcohol consumption before trial was inconsistent with his trial testimony. The District Court did not abuse its discretion in denying Hummel's motion to call the prosecutor as an impeachment witness on these facts.

*Id.* at ¶ 11.

**Analysis**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a federal habeas court may not grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," 28 U.S.C. § 2254(d). The first exception applies when the claim's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1). The second exception applies when the claim's application was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); *see also*, *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

The statute applies whenever the state court has denied a federal claim on its merits, whether the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct

rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id*. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

### i.    *Brady* Violation

Hummel first suggests that a *Brady* violation occurred when he was prevented from calling the prosecutor to challenge a prior statement given by Smith.

The U.S. Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." Under *Brady*, prosecutors are responsible for disclosing "evidence that is both favorable to the accused and material either to guilt or punishment." *United States v. Bagley*, 473 U.S. 667, 674 (1985) (internal quotation marks omitted). The failure to turn over such evidence violates due process. *Wearry v. Cain*, 577 U.S. 385, 392 (2016) (per curiam). The prosecutor's duty to disclose material evidence favorable to the defense "is applicable even though there has been no request by the accused and encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

"There are three components to a true *Brady* violation: '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Benson v. Chappell*, 958 F. 3d 801, 831 (9th Cir. 2020)(*quoting Strickler*, 527 U.S. at 281-82.) "The terms 'material' and 'prejudicial' are used interchangeably in *Brady* cases." *Benn v. Lambert*, 283 F. 3d 1040, 1053 n. 9 (9th Cir. 2002). Failure to disclose evidence by the prosecution is prejudicial "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. A "reasonable probability" of a different result exists when the failure to disclose "undermines confidence in the outcome of the trial." *Id*. at 678.

There was no *Brady* violation in the instant case. As an initial matter, there was no suppression. Prior to the start of trial, the State of Montana informed defense counsel that there must have been a miscommunication when it was relayed to Hummel that Smith had been drinking on the day of the incident. Hummel conflates the Montana state trial court's evidentiary ruling with the pre-trial disclosure of Smith's revised account by the State of Montana. The disclosure of Smith's corrected statement to defense counsel proves fatal to Hummel's purported *Brady* claim.

8

### ii.    *Evidentiary Ruling/Right to Present a Defense*

The U.S. Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also, Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *LaJoie v. Thompson*, 217 F. 3d 663, 668 (9th Cir. 2000). "The defendant's right to present evidence, however, is not absolute." *Perry v. Rushen*, 713 F. 2d 1447, 1450 (9th Cir. 1983).

"[S]tate and federal rule makers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id.* (*quoting Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions" as set forth in the state's evidentiary rules. *Scheffer*, 523 U.S. at 308.

In *Moses v. Payne*, 555 F. 3d 742 (9th Cir. 2009), the Ninth Circuit addressed whether a state trial court's exercise of discretion to exclude expert testimony warranted relief on federal habeas review for violation of the petitioner's right to present a complete defense. Concluding that it does not, the Ninth Circuit observed the U.S. Supreme Court precedent finding violations of a defendant's

9

right to present a complete defense involved state evidentiary rules that, "by their terms, required the trial court to exclude crucial evidence that had a critical effect on the trial, with little or no rational justification." *Id*. at 758.

The Ninth Circuit reaffirmed the *Moses* holding in *Brown v. Horell*, 644 F. 3d 969 (9th Cir. 2011). The petitioner in *Brown* argued that the trial court violated his right to present a complete defense by excluding witness testimony under state evidentiary rules. *Id*. at 983. The Ninth Circuit noted that "the Supreme Court has not decided any case either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present a complete defense or 'establish[ing] a controlling legal standard for evaluating such exclusions," and consequently the petitioner could not "show that the state appellate court's ruling was either contrary to or an unreasonable application of clearly established Supreme Court precedent." *Id*. (*quoting Moses*, 555 F. 3d at 758-59); *see also, Smith v. Small*, 697 Fed. App'x 538, 539 (9th Cir. 2017) (state appellate court ruling that affirmed trial court's exclusion of three proposed defense witnesses was not contrary to clearly established federal law because the Supreme Court has not squarely addressed the constitutionality of the discretionary exclusion of evidence.)

Pointing to his state court briefing, Hummell urges the Court to find that he had a right to call the prosecutor as a witness to expose Smith's prior inconsistent statement that Smith had been drinking on the day in question. *See e.g*., (Doc. 13

10

at 11.)  Hummel asserts that calling the prosecutor represented the only effective

manner in which to expose this inconsistency.  Hummell believes that had he been

allowed to do so, it would have undermined Smith's credibility in the eyes of the

jury.  (*Id*.)

The Montana Supreme Court concluded that the Montana state district court

did not abuse its discretion.  Particularly because Hummel was allowed to cross-

examine Smith, and to recall Smith to testify to inquire further about Smith's

alcohol consumption on the date in question.  Hummell asked about Smith's past

alcohol use, whether he had ever been intoxicated, whether he consumed alcohol

on the day in question, and why his prior statement to the prosecutor was

inconsistent with his trial testimony.

The Montana Supreme Court reasonably decided that no prejudicial abuse of

discretion occurred.  The denial of this claim was not objectively unreasonable

under clearly established federal law.  The record establishes that Hummel was not

forbidden from cross-examining Smith with his prior inconsistent statement.  No

clearly established federal law contradicts the discretionary ruling that that

prevented Hummel from calling the prosecutor to testify in an attempt to further

stress the purported inconsistency in Smith's trial testimony.  *See e.g., Moses*, 555

F. 3d at 758-59.  The Montana Supreme Court reasonably denied the claim as the

trial court's ruling was constitutionally permissible.  The Court will deny

Hummel's amended petition.

**Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

Hummel has made a substantial showing that he was deprived of a constitutional right.  Reasonable jurists could find a basis to encourage further proceedings.  The Court will grant a certificate of appealability.

Based on the foregoing, the Court enters the following:

**ORDER**

1.  The Amended Petition (Doc. 7) is DENIED.

2.  The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3.  A certificate of appealability is GRANTED.

DATED this 23rd day of January, 2026.

_____

Brian Morris, Chief District Judge
United States District Court